| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| Devereaux Macy, *et al.*, | § § § § | |
| Plaintiffs, | | |
| *versus* | § § § § § § § | Civil Action H-10-1861 |
| Whirlpool Corporation, | | |
| Defendant. | | |

# Opinion on Summary Judgment

1. *Introduction.*

   Two people have sued the maker of their gas range because they say that it poisoned them by leaking carbon monoxide. Because they have imagined the leak and their injuries, the company will prevail.

2. *Whirlpool.*

   In May of 2000, Scott and Kimberly Byrd bought a gas range from Sears, Roebuck & Company. They used it daily for eight years without incident. The range was manufactured by Whirlpool Corporation in May of 2000 at a plant in Montmagny, Canada. The plant and the range were certified by the Canadian Standards Association.

   On the range, Whirlpool warns consumers that California has said that all gas ranges – including this one – "can cause low-level exposure to . . . substances, including . . . carbon monoxide." The parties agree that all gas ranges emit some carbon monoxide – an example of lawyers belaboring the obvious.

3. *Devereaux Macy.*

   In 2008, the Byrds sold their home – including their gas range – to Devereaux Macy and Joel Santos. They will be jointly called Macy. Four months after Macy moved into the

home, she called her gas company, CenterPoint Energy, Inc., because she had a hunch that her range was leaking dangerous amounts of carbon monoxide.

CenterPoint's technician found that the ambient levels of carbon monoxide in her home were safe. He did, however, further inspect the range at Macy's request. When he improperly inserted his carbon-monoxide detector into the cavity of the oven, it registered 2,000 parts per million – a hazardous result and inexplicable mistake.

Because of this flawed reading, Macy went to three doctors in Houston who all concluded that she had not been exposed to toxic levels of carbon monoxide. She complained of headaches, dizziness, tiredness, and body aches. One of the doctors concluded that her subjective symptoms may have been caused by her depression.

One year later, she found doctors in Louisiana – five to six hours away – to diagnose her with carbon-monoxide poisoning. These doctors have worked with her attorneys before. Even they admit, however, that her symptoms may not be connected to carbon monoxide. There is no reasonable medical probability that she has been affected by carbon monoxide.

4.  *Carbon Monoxide.*

Exposure to high levels of carbon monoxide is toxic. Nobody, however, can avoid it entirely. A small amount – 0.2 parts per million – naturally occurs in the air. Four representative organizations have published standards about how much exposure to carbon monoxide is safe:

| | |
|---|---|
| Occupational Safety and Health Administration | 50.0 parts per million |
| CenterPoint Energy, Inc. | 35.0 parts per million |
| National Institute of Occupational Safety | 50.0 parts per million |
| American Conference of Governmental and Industrial Hygienists | 25.0 parts per million |

In a book published by the World Health Organization, David G. Penney and others wrote an article asserting that the standard should be 6.5 parts per million – roughly one-quarter of the lowest standard. It is not a standard; it is advocacy. It has not been adopted by the World Health Organization or a regulatory agency in the United States.[1]

5.  *No Injury.*

Macy has not shown that she was injured – much less that she was injured by Whirlpool's range.

Shortly after her supposed exposure to carbon monoxide, she went to Conroe Regional Medical Center. Its tests of her blood showed no toxicity. In response to the negative finding, Macy threatened to sue the doctor. Next, a family practitioner and a neurologist each confirmed Conroe's diagnosis. After extensive tests of her brain, the neurologist concluded that Macy's symptoms were due to her depression.

The total absence of credible medical evidence that Macy was injured is consistent with the parties' tests of her range. For two days, technicians examined her range by cooking sixteen pounds of meat – a dubious approximation of her "ordinary" use.

On the first day, the ambient carbon monoxide in her home did not exceed seven parts per million. Frustrated by these results, she turned off her air conditioner for the second day. After six hours, it was 86 degrees in her house. The ambient carbon monoxide still did not exceed 18 parts per million.

Macy did not ordinarily cook sixteen pounds of meat for twelve hours over two days in a house that could double as a sauna. Even if she did, her house did not have dangerous amounts of carbon monoxide in it.

Macy's carbon monoxide detector – positioned directly above the range – did not alert during the test for a reason: there was no leak. Assuming she has not conjured her symptoms altogether, they were not caused by the range.

---

[1] David G. Penney, *et al.*, Carbon Monoxide, *in* WHO Guidelines for Indoor Air Quality: Selected Pollutants 4 (2010) ("[T]he published material is being distributed without warranty of any kind, either express or implied.... The views expressed by authors, editors, or expert groups do not necessarily represent the decisions or the stated policy of the World Health Organization.").

6. *Technicians.*

Macy's technicians, David G. Penney and Paul L. Carper, are struck. Both of their reports are press releases, not serious studies of the general topic or the particulars of Macy's house, range, and body.

Macy's toxicologist, David G. Penney, says that exposure to small amounts of carbon monoxide over time is hazardous. His only evidence for this conclusion is that he says that the World Health Organization has adopted his standard. That is plain dishonesty. It merely published an article he wrote. It did not endorse his conclusions, and no one else has.

Penney next opines that Macy's exposure to an unknown amount of carbon monoxide caused her dizziness, headaches, and other symptoms. That opinion is untethered to reliable data like the level of her exposure. He has not articulated a basis for concluding that she had been injured except her saying that she has these symptoms. No blood-gas test was abnormal.

Even if he were a physician, his methodology is unreliable. Months after her supposed poisoning, he interviewed Macy and accepted everything that she said as true. He then concluded that the symptoms she described were consistent with carbon-monoxide poisoning. He has no evidence to substantiate these guesses. This is not a question of credibility; he simply has nothing to say.

Macy's mechanical engineer, Paul L. Carper, testified about the defects of Whirlpool's range. He says that the position of its igniter deformed the flame spreader in the oven, causing a hazardous leak of carbon monoxide. Despite his insisting that Whirlpool should change the position of its igniter, Carper has not specified where he would place it. He has not quantified the carbon-monoxide levels generated by this presumed misplacement. He has not tested his hypothesis at all – much less shown by repeatable experimental data that the reduction would have been significant. He also has not analyzed whether moving the igniter would be economically and technologically feasible.

Carper concedes that his expertise is in investigating gas fires, not testing ovens or carbon monoxide in homes. Although a fire investigator may be familiar with natural gas, he is not qualified to testify about the safe design of kitchen appliances.

Macy's technicians – Carper and Penney – offer testimony that fails every test of scientifically reliable information. Their reports will be struck.

7. *Products Liability.*

Whirlpool is strictly liable for Macy's injuries if its range is (a) defectively designed, (b) the design caused her injuries, and (c) there is a safer alternative that is feasible.[2] A design is defective if it is unreasonably dangerous.[3]

Whirlpool's range works safely and effectively. No evidence has been produced that Macy's range – much less its general design – emits excessive amounts of carbon monoxide. Whirlpool is not obliged to design around imaginary problems. Even if its range was unreasonably dangerous, Macy has not given the court a reliable analysis of an alternative design that cures the danger.

Macy could also recover if her range had a manufacturing defect – a dangerous deviation from its specifications.[4] Her only evidence of deviation is her technician's pseudo report and tests that have been struck. This range was tested when it was manufactured. It passed. Her house was tested when she complained. It passed. The range was again tested after this lawsuit. It passed.

8. *Warning.*

Whirlpool must warn Macy of real, not imagined, dangers.[5] It cannot accommodate every fleeting thought by hypochondriacs and depressives. If it did, consumers would have no warnings because the false and trivial notices would obscure the significant warnings.

The gas range does not emit dangerous amounts of carbon monoxide. According to every test of Macy's range, hers was safe and effective.

9. *Other Cases.*

In 2001, Richard and Faith Williamson sued Whirlpool because their gas range leaked. That case settled in 2003. Macy wants the court to infer that the settlement in that case is an

---

[2] Tex. Civ. Prac. & Rem. Code § 82.005.

[3] Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 426 (Tex. 1997).

[4] Ford Motor Co. v. Ledesma, 242 S.W.3d 32, 41–42 (Tex. 2007).

[5] Gen. Motors Corp. v. Saenz, 873 S.W.2d 353, 356 (Tex. 1994).

admission of liability in her case. It is not. It has nothing to do with her lawsuit. When Whirlpool tested Williamson's range, it was defective. Macy's range has passed every test.

Gratuitously, Macy says that Whirlpool maliciously destroyed all of its records from the Montagmy plant after the first lawsuit. She has no fact to support her insult. Whirlpool closed the plant and routinely destroys records after two years. It was not obliged to keep the records about the plant.

10. *Conclusion.*

Devereaux Macy and Joel Santos will take nothing from Whirlpool Corporation.

Signed on August 28, 2014, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge